**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN F. PEOPLES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DISCOVER FINANCIAL SERVICES, INC.** | : | **CIVIL ACTION NO. 08-CV-2024** |
| **and DISCOVER CARD SERVICES, INC.** | : | |
| **trading as DISCOVER CARD,** | : | |
| | : | |
| **and,** | : | |
| | : | |
| **GINGER DAYLE, GINGER DAYLE** | : | |
| **PRODUCTIONS and NEW CITY** | : | |
| **STAGE COMPANY,** | : | |
| | : | |
| **Defendants.** | : | |

**O R D E R**

AND NOW, this _____ day of _____ 2008, upon consideration of the Motion For Summary Judgment of Defendant DFS Services LLC, and the submissions of the parties relating thereto, if any, it is hereby **ORDERED** that said motion is **GRANTED**.

Judgment is hereby entered in favor of Defendant DFS Services LLC (captioned as Discover Financial Services, Inc. and Discover Card Services, Inc. trading as Discover Card), and against Plaintiff John F. Peoples, and Count One of the Complaint of Plaintiff John F. Peoples is hereby **DISMISSED WITH PREJUDICE**.

_____
J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN F. PEOPLES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DISCOVER FINANCIAL SERVICES, INC.** | : | **CIVIL ACTION NO. 08-CV-2024** |
| **and DISCOVER CARD SERVICES, INC.** | : | |
| **trading as DISCOVER CARD,** | : | |
| | : | |
| **and,** | : | |
| | : | |
| **GINGER DAYLE, GINGER DAYLE** | : | |
| **PRODUCTIONS and NEW CITY** | : | |
| **STAGE COMPANY,** | : | |
| | : | |
| **Defendants.** | : | |

**MOTION FOR SUMMARY JUDGMENT**

Defendant Discover Financial Services, Inc., now known as DFS Services LLC,[1]

hereby moves for summary judgment under Fed. R. Civ. P. 56 for the reasons stated in the

attached memorandum and exhibits.

/s/ Benjamin M. Schmidt
Martin C. Bryce, Jr. (I.D. No. 59409)
Benjamin M. Schmidt (I.D. No. 205096)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
bryce@ballardspahr.com
schmidtb@ballardspahr.com
Telephone:  (215) 864-8238/8136

Dated: November 13, 2008                    Attorneys for Defendant DFS Services LLC

---

[1]     Naming "Discover Card Services, Inc. trading as Discover Card" as a party is a misnomer because it is not a legal entity, but rather a credit card serviced by DFS Services LLC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. PEOPLES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DISCOVER FINANCIAL SERVICES, INC. | : | CIVIL ACTION NO. 08-CV-2024 |
| and DISCOVER CARD SERVICES, INC. | : | |
| trading as DISCOVER CARD, | : | |
| | : | |
| and, | : | |
| | : | |
| GINGER DAYLE, GINGER DAYLE | : | |
| PRODUCTIONS and NEW CITY | : | |
| STAGE COMPANY, | : | |
| | : | |
| Defendants. | : | |

_____

## MEMORANDUM OF DEFENDANT DFS SERVICES LLC
## IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT
_____

Martin C. Bryce, Jr. (I.D. No. 59409)
Benjamin M. Schmidt (I.D. No. 205096)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
bryce@ballardspahr.com
schmidtb@ballardspahr.com
Telephone: (215) 864-8238/8136

Dated: November 13, 2008    Attorneys for Defendant DFS Services LLC

## TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................ 1

II.  STATEMENT OF THE FACTS ................................................................. 4

III.  ARGUMENT ....................................................................................... 9

    A.  Standard of Review. ...................................................................... 9

    B.  Peoples' Claims Are Barred by the Doctrine of Illegality. ..................... 9

        1.  Peoples testified that the transactions his claims are grounded upon
            are prostitution offenses in violation of 18 Pa.C.S. § 5902 ..................... 9

        2.  The doctrine of illegality bars claims grounded upon an immoral or
            illegal act. ...................................................................... 10

    C.  Peoples' Breach of Contract Claim Fails as a Matter of Law ................... 13

        1.  Peoples cannot prove the elements for breach of contract. ..................... 13

        2.  DFS did not breach any duties imposed by its Cardmember
            Agreement. ...................................................................... 14

    D.  Peoples' Americans With Disabilities Act Claim Fails as a Matter of Law. ....... 16

        1.  Peoples is not entitled to relief under Title III of the ADA because
            the Discover Card services provided by DFS were unrelated to a
            "place of public accommodation" of DFS as defined by the Third
            Circuit in *Ford v. Schering-Plough Corporation.* ................................... 16

        2.  The disputed transactions took place at a private residence rather
            than at a place of public accommodation. ............................................ 18

        3.  DFS provides transaction charges in another reasonable format for
            the sight impaired such as over the telephone. ...................................... 18

    E.  Peoples' Section 504 Claim Fails as a Matter of Law Because The
        Rehabilitation Act Applies Only to a Program or Activity Carried Out by a
        Federal Executive Agency or With Federal Funds. ................................... 19

    F.  Peoples' Pennsylvania Human Relations Act Claim Fails as a Matter of
        Law Because Peoples Failed to Exhaust His Administrative Remedies. ............. 20

IV.  CONCLUSION .................................................................................. 21

# TABLE OF AUTHORITIES

PURSUANT TO "BLUE BOOK" RULE 10.7, DFS SERVICES LLC'S CITATION OF CASES DOES NOT INCLUDE "CERTIORARI DENIED" DISPOSITIONS THAT ARE MORE THAN TWO YEARS OLD.

## FEDERAL CASES

*Access Now, Inc. v. Southwest Airlines Co.*,
227 F. Supp. 2d 1312 (S.D. Fla. 2002),
*aff'd* 385 F.3d 1324 (11th Cir. 2004)........................................................16-17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................15

*Bauman and Vogel, C.P.A. v. Del Vecchico*,
423 F. Supp. 1041 (E.D. Pa. 1976).........................................................10-11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................9, 13

*Disabled in Action v. Sykes*,
833 F.2d 1113 (3d Cir. 1987).......................................................................19

*EMCE Elec., Mech. & Constr. Co., Inc. v. Lennox Apartments, Inc.*,
2008 U.S. Dist. LEXIS 41335 (E.D. Pa. May 27, 2008)..............................11

*Fireman's Ins. Co. v. DuFresne*,
676 F.2d 965 (3d Cir. 1982).........................................................................15

*Ford v. Schering-Plough Corp.*,
145 F.3d 601 (3d Cir. 1998)....................................................................16-17

*Independent Hous. Servs. v. Fillmore Ctr. Assocs.*,
840 F. Supp. 1328 (N.D. Cal. 1993).............................................................18

*Krause v. Modern Group*,
156 F. Supp. 2d 437 (E.D. Pa. 2000).............................................................9

*Kunwar v. Simco*,
135 F. Supp. 2d 649 (E.D. Pa. 2001).............................................................20

*Mantilla v. United States*,
302 F.3d 182 (3d Cir. 2002).........................................................................10

*Nieves v. Hess Oil Virgin Islands Corp.*,
 819 F.2d 1237 (3d Cir. 1987) ........................................................15

*Pi Lambda Phi Fraternity v. University of Pittsburgh*,
 229 F.3d 435 (3d Cir. 2000) ...........................................................9

*Richards v. Foulke Assocs.*,
 151 F. Supp. 2d 610 (E.D. Pa. 2001) ...........................................20

*Stoutenborough v. National Football League, Inc.*,
 59 F.3d 580 (6th Cir. 1995) ...........................................................17

*Ware v. Rodale Press, Inc.*,
 322 F.3d 218 (3d Cir. 2003) ...........................................................13

## STATE CASES

*Alexander v. Synthatron Corp.*,
 10 Pa. D. & C. 4th 584 (C.P. 1991),
 *aff'd* 620 A.2d 1230 (Pa. Super. Ct. 1992) ...............................11-12

*Badgley v. Beale*,
 3 Watts 263, 1834 Pa. LEXIS 177 (1834).....................................12

*Companaro v. Pennsylvania Elec. Co.*,
 738 A.2d 472 (Pa. Super Ct. 1999).............................................20

*CoreStates Bank, N.A. v. Cutillo*,
 723 A.2d 1053 (Pa. Super. Ct. 1999) ...........................................13

*Feld & Sons Inc. v. Pechner, Dorman, Wolfee, Rounick and Cabot*,
 458 A.2d 545 (Pa. Super. Ct. 1983) .........................................11-12

*Fowler v. Scully*,
 72 Pa. 456 (1872) .........................................................................11

*Mancini v. Yerkes*,
 10 Pa. D. & C. 3d 612 (C.P. 1979) ...............................................12

*Marriott Corp. v. Alexander*,
 799 A.2d 205 (Pa. Commw. Ct. 2002).........................................20

## STATUTES

18 Pa.C.S. § 5902.............................................................................9, 10

18 U.S.C. § 1952 ........................................................................................... 10

42 U.S.C. § 12182 ................................................................................. *passim*

29 U.S.C. § 794 ..................................................................................... *passim*

42 U.S.C. § 12101 ................................................................................. *passim*

43 P.S. § 955 ......................................................................................... *passim*

43 P.S. § 962 ............................................................................................... 21

## RULES

Fed. R. Civ. P. 56 .......................................................................................... 9

## OTHER AUTHORITIES

Pennsylvania Law Encyclopedia 2d Civil Rights § 23 ....................................... 21

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

The only real question before the Court on Defendant DFS Services LLC's ("DFS") motion for summary judgment is whether Plaintiff John F. Peoples' ("Peoples") Complaint is barred by the doctrine of illegality, on grounds that Peoples admitted his claims arise out of prostitution offenses.  If the Court answers in the affirmative, as it must, it need not reach any further issues presented, because the principal of public policy is, that no court will lend its aid to a plaintiff who grounds his action upon an immoral or illegal act.

Peoples, an attorney sworn to uphold this Commonwealth's laws, could not be more brazen in boasting that the underlying transactions his claims are grounded upon were prostitution offenses.  At his deposition, Peoples testified that he visited Defendant Ginger Dayle's ("Ms. Dayle") apartment dozens of times and paid her using his Discover Card to have intercourse with him.  DFS was unaware that Peoples had been using his Discover Card to purchase prostitution services when the transactions took place in 2007.  In Count One of his Complaint, Peoples alleges that DFS breached its Cardmember Agreement and discriminated against him under Title III of the Americans with Disabilities Act, section 504 of the Rehabilitation Act, and the Pennsylvania Human Relations Act.  Assuming for purposes of this motion that Peoples' characterization of the services he purchased is true, his claims must be dismissed with prejudice under the doctrine of illegality.

DFS is also entitled to summary judgment on the following separate and independent grounds:

Peoples contends in Count One that Ms. Dayle took advantage of his alleged sight impairment by tricking him into signing receipts for higher than authorized charges, and claims DFS breached its Cardmember Agreement by not crediting his account for the disputed amounts. The claim fails as a matter of law because Peoples has not -- and  cannot -- demonstrate DFS

breached any duty imposed by its Cardmember Agreement. Peoples failed to attach any contract with DFS to his complaint or quote any contractual provision he contends DFS breached. In addition, during the investigation of his dispute, Plaintiff admitted to DFS that he voluntarily provided his credit card to Ms. Dayle to purchase escort services from her. DFS thus is entitled to summary judgment because Peoples lacks the evidence required to prove any breach of a contractual duty by DFS.

Peoples also purports to allege a claim under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"). Peoples contends that the Discover Card services are a "public accommodation" because they are used at stores and public places, and DFS "failed to take steps to reasonably accommodate" his sight impairment by not providing him with "an auxiliary devise [sic] to allow him to hear or feel the amount being charged on his receipt, or to prevent fraud by merchants or to take remedial measures in the case of fraud by merchants." (Compl. ¶¶ 27, 29). Peoples' ADA claim fails for three separate reasons.

First, Title III prohibits discrimination against the disabled in places of public accommodation owned, leased, or operated by the defendant. Peoples cannot demonstrate any nexus between the Discover Card services he used to pay Ms. Dayle and a place of public accommodation of DFS. Credit cards serviced by DFS may be used at a merchant's place of public accommodation, but DFS does not own, lease, or operate those places.

Second, all of Peoples' disputed transactions took place at Ms. Dayle's apartment, and a private apartment is not a place of public accommodation.

Third, DFS provides information on the amount charged that appears on receipts in another reasonable format for the sight impaired such as over the telephone. Peoples admitted that he could have telephoned DFS to hear the amounts of the disputed charges, but simply chose

not to do so.  Likewise, DFS has chargeback procedures to reverse a merchant's charges to a cardmember, but Peoples was not entitled to have the disputed charges reversed because he voluntarily gave his Discover Card to Ms. Dayle.  Thus, Peoples' Title III claim is meritless.

Peoples next purports to allege a claim under section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("section 504").  Section 504 only applies to a "program or activity receiving Federal financial assistance" or "conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).  Peoples has not alleged -- nor can he prove -- that he was discriminated against under any program or activity carried out by a federal executive agency or with federal funds.  DFS is not a federal agency and Discover Card is not carried out with federal funds.  Thus, Peoples' section 504 claim also fails.

Finally, Peoples purports to assert a Pennsylvania Human Relations Act, 43 P.S. § 955 ("PHRA"), claim against DFS.  It is the law of this Commonwealth, however, that a plaintiff who wishes to bring a PHRA claim in civil court must first file an administrative complaint with the Pennsylvania Human Relations Commission ("Commission").  If a plaintiff fails to file a timely complaint with the Commission within 180 days of the alleged discriminatory acts, then he or she is precluded from pursuing judicial remedies.  Peoples filed his Complaint with this District Court on April 18, 2008, yet he never filed a complaint with the Commission.  Thus, Peoples failed to exhaust his administrative remedies before the Commission.  Moreover, more than 180 days have passed since the alleged discriminatory acts occurred.  Thus, Peoples' PHRA claim fails because it is improper and untimely.

Accordingly, the Court should grant summary judgment to DFS and dismiss Count One of the Complaint with prejudice in its entirety.

## II.    STATEMENT OF THE FACTS

Peoples is a 59-year old attorney who lives and has a law practice in Delaware County, Pennsylvania.  (Compl. ¶ 1);[1] (Peoples Tr. at 1, 73).[2]  DFS is Delaware limited liability company with its principal place of business in Riverwoods, Illinois.  (Answer ¶ 2).[3]  DFS serviced the Discover Card issued to Peoples.  (Answer ¶ 5).  Peoples alleges that "Defendant Ginger Dayle is a service provider, providing personal, private sessions with clients for a predetermined per-session fee. She is not a doctor, nurse or licensed medical practitioner. She advertises herself a[s] an expert at providing personal, hands-on service to individual customers in private sessions at a set rate."  (Compl. ¶ 6).

This case arises out of 11 disputed credit card transactions between October 9, 2007 and November 18, 2007 where Peoples used his Discover Card to purchase services from Defendants Ginger Dayle, Ginger Dayle Productions, and New City Stage Company (hereinafter referred to collectively as the "Dayle Defendants").  (Compl. ¶ 13).  Peoples' history with the Dayle Defendants, however, dates to at least March 3, 2007, when according to a copy of Peoples' monthly billing statement with a closing date of April 3, 2007, there is a charge listed as "GINGER DAYLE PRODUCTIO[NS] PHILADELPHIA PA 750.00."  (April 2007 Billing Statement at Page 3 of 4).[4]  The parties agree Peoples purchased services from the Dayle Defendants at least 25 times between March and November 2007.  (Peoples Tr. at 5) ("Maybe

---

[1]    Peoples' Complaint filed April 30, 2008 ("Compl. ¶ __") is attached hereto as Exhibit A.

[2]    All pages cited to in this memorandum from Peoples' deposition transcript dated October 23, 2008 ("Peoples Tr. at __") are attached hereto as Exhibit B.

[3]    DFS' Answer To Complaint With Affirmative Defenses filed July 16, 2008 ("Answer ¶ __") is attached hereto as Exhibit C.

[4]    A redacted copy of Peoples' monthly billing statement dated April 3, 2007 ("April 2007 Billing Statement") is attached hereto as Exhibit D.

20, 25 [times] but that's only a guess.")  Pursuant to the attached affidavit, there are 34 such

transactions listed in Peoples' monthly billing statements from March 3, 2007 to November 18,

2007.  (Holdman Aff. ¶ 4).[5]  The amounts charged were $375 (once), $750 (18 times), $1075

(twice), $1100 (12 times), and $1600 (once).  (Holdman Aff. ¶ 5).  Peoples disputed ten of the

charges for $1100 and the $1600 charge, which were made in October and November of 2007

with DFS.  (Holdman Aff. ¶ 6).  Peoples did not dispute the single $375 charge, all the $750

charges, the two $1075 charges, and two of the charges for $1100, which were made between

March and September of 2007.  (Holdman Aff. ¶ 7).

Peoples alleged a breach of contract claim against DFS, as follows: "Defendant

Discover Card's acts and omissions constitute a Breach of Contract of the written cardholder

membership contract between Plaintiff and Defendant Discover Card, by failing to substantially

provide the credit card services it agreed to prove to Plaintiff."  (Compl. ¶ 33).  However,

Peoples' failed to attach a copy of any contract with DFS to his Complaint, or to quote or

otherwise specify any provision of the contract which Peoples contends DFS breached.  Peoples'

relationship with DFS was governed solely by the Cardmember Agreement.[6]  The Cardmember

Agreement became effective the first time Peoples ever used his Discover Card.

In addition to his breach of contract claim for $8,650, Peoples also seeks damages

in excess of $1 million together with attorney's fees, costs, and interest for alleged discrimination

under the Pennsylvania Human Relations Act, section 504 of the Rehabilitation Act, and Title III

of the Americans with Disabilities Act.  (Compl. ¶¶ 18, 20-32).

---

[5]      The Affidavit of Misty Holdman ("Holdman Aff. ¶ __") is attached hereto as Exhibit E.

[6]      The Cardmember Agreement is attached hereto as Exhibit F.

DFS investigated the disputed charges. During the investigation, Peoples reported to DFS that he purchased escort services from the Dayle Defendants. (Holdman Aff. ¶ 10). At his deposition, Peoples testified that Ms. Dayle was his escort and prostitute. (Peoples Tr. at 4-6). For example, Peoples testified, "I paid her and she had sex with me and there was an understanding that it was a payment for sex." (Peoples Tr. at 5). Peoples also testified that the transactions ". . . all occurred in her [Ms. Dayle's] apartment." (Peoples Tr. at 16). Peoples admitted to paying for these prostitution offenses with his Discover Card:

> Q.    Were any of the payments by credit card?
>
> **A.    They were by credit card.**
>
> Q.    Okay. Did you use your Discover Card?
>
> **A.    Yes, I did. Most of the time I used the Discover Card – almost all of the time.**
>
> Q.    To pay Ginger Dayle for sex?
>
> **A.    Yes, that's correct.**
>
> Q.    Were there any occasions when you used your Discover Card to pay Ginger Dayle that it wasn't for sexual favors?
>
> **A.    No.**
>
> (Peoples Tr. at 6).
>
> ***
>
> Q.    Now, each time you had sex with her, right, did you pay her for the sex?
>
> **A.    I did, with the credit card.**
>
> ***
>
> Q.    So you paid for Ms. Dayle as a prostitute with a credit card; is that your testimony?
>
> **A.    That's right.**

(Peoples Tr. at 16).

Q.     Now, the essence of your claim against Ms. Dayle is that
       she overcharged you for prostitution services; is that
       correct?

**A.     Right.**

(Peoples Tr. at 53).

                                    ***

Q.     Every time Ms. Dayle had your credit card, was it
       voluntary on your part?

**A.     Yeah, I gave her the credit card.**

(Peoples Tr. at 58).

Peoples averred in his Complaint that he signed the receipts Ms. Dayle gave to

him, but had no way to prevent the alleged overcharges because he could not read the amounts

written on the receipts. (Compl. ¶ 13). At deposition, Peoples testified that he received and

signed receipts for the vast majority of the transactions, and could not identify any specific

transactions for which he did not receive and sign a receipt. (Peoples Tr. 63-64).

All Discover cardmembers (including Peoples in 2007), may call 1-800-

DISCOVER (347-2683), 24-hours a day in order to hear and check a list of recent transactions

posted to the account by date, amount, and transaction type. (Holdman Aff. ¶ 8). The automated

menu includes a "blind option zero" whereby cardmembers may dial zero to connect with a live

customer services representative in order to hear and ask questions about their recent

transactions, and other account information, from a DFS representative. (Holdman Aff. ¶ 9). If

Peoples had called and was told of a transaction with which he disagreed, he could have disputed

the transaction and would not have had to pay it unless it turned out to be genuine, and, not a

result of a prohibited use of the Cardmember Agreement.

Peoples admitted that he could have telephoned DFS to check and hear the amounts charged to his Discover Card account, but simply chose not do so:

> Q.    Would you have been capable as a blind person of using the telephone to call Discover had you chosen to do so?
>
> **A.    Yes, I would.**
>
> Q.    Okay.
>
> **A.    But as I said, I would have to be calling them everyday and they would get a little tired of it too.**
>
> Q.    Well, are you aware that you could call an automated menu and get a recording of all your charges?
>
> **A.    No, I wasn't aware of that.**
>
> Q.    Do you deny that there is one?
>
> **A.    Oh, I don't know, but if you say there was, I suspect there was.  Anything with credit cards I had to have my mom or my paralegal do it.**

(Peoples Tr. at 67-68).

DFS does not supply credit card terminals, related equipment or supplies to any merchants which accept Discover Card as a form of payment.  (Holdman Aff. ¶ 11).  Nor does DFS receive receipts from such merchants in the usual course of its business.  *Id.*  DFS did not supply the Dayle Defendants with any credit card terminals, related equipment or supplies.  (Holdman Aff. ¶ 12).  Nor did DFS receive copies of any receipts for the disputed transactions between Peoples and the Dayle Defendants until DFS investigated the dispute.  *Id.*

The Cardmember Agreement prohibits use of the Discover Card for unlawful transactions.  (Cardmember Agreement at 2-3).  DFS was unaware that Peoples had been using his Discover Card to purchase prostitution services when the transactions took place in 2007.  (Holdman Aff. ¶ 13).  Peoples is not presently a Discover Card member and no longer has Discover Card account privileges.  (Holdman Aff. ¶ 14).

8

III.    **ARGUMENT**

    A.    **Standard of Review.**

This Court has set forth the standard of review on a motion for summary

judgment under Rule 56 of the Federal Rules of Civil Procedure as follows:

> [s]ummary judgment is appropriate if there is no genuine issue of
> material fact and the moving party is entitled to judgment as a
> matter of law. The movant must show that there is no triable issue.
> The nonmovant having the burden of proof at trial must point to
> affirmative evidence in the record - and not simply rely on
> allegations or denials in the pleading - in order to defeat a properly
> supported motion.

*Krause v. Modern Group*, 156 F. Supp. 2d 437, 439, n.1 (E.D. Pa. 2000) (Ludwig, J.) (granting

the defendants' motion for summary judgment), citing *Celotex Corp. v. Catrett*, 477 U.S. 317,

324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Pi Lambda Phi Fraternity v. University of

Pittsburgh*, 229 F.3d 435, 441 n.3 (3d Cir. 2000).

    B.    **Peoples' Claims Are Barred by the Doctrine of Illegality.**

        1.    **Peoples testified that the transactions his claims are grounded upon
are prostitution offenses in violation of 18 Pa.C.S. § 5902.**

Peoples is suing DFS for $1 million, attorney's fees, costs of litigation,

prejudgment interest, and injunctive relief to change its business procedures pertaining to the

sight impaired.  Peoples' criminal activity, however, precludes him from recovering any

damages or obtaining injunctive relief in this matter.

Patronizing a prostitute as Peoples claims to have done is illegal in this

Commonwealth.  Under 18 Pa.C.S. § 5902(e),  "[a] person commits the offense of patronizing

prostitutes if that person hired a prostitute or any other person to engage in sexual activity with

him or her or if that person enters or remains in a house of prostitution for the purpose of

engaging in sexual activity."  Furthermore, using any facility in interstate commerce with the

intent to carry on any unlawful activity (including prostitution offenses in violation of the laws of the State in which they are committed or of the United States), is a federal crime. 18 U.S.C. § 1952.

According to his own testimony, Peoples paid Ms. Dayle to have sex with him in violation of 18 Pa.C.S. § 5902:

> Q.    Have you ever thought that as an attorney licensed in Pennsylvania that perhaps you should not use a prostitute because it's illegal?
>
> **A.    It doesn't bother me because it doesn't affect my practice of law. Prostitution, I believe, is a misdemeanor. Even if convicted, it would not be a problem for the disciplinary board.**

(Peoples Tr. at 73, *see also* 6, 16, 53, 58, 64).

**2.    The doctrine of illegality bars claims grounded upon an immoral or illegal act.**

Courts within the Third Circuit hold that the doctrine of illegality and the related doctrines of *in pari delicto* and unclean hands prohibit actions grounded upon immoral or illegal acts: "[i]t is a well-settled and long-standing rule in Pennsylvania that a court will not enforce a contract which is founded upon transactions in violation of the public policy as declared by the legislature." *Bauman and Vogel, C.P.A. v. Del Vecchico*, 423 F. Supp. 1041, 1044 (E.D. Pa. 1976). "The policy of the law is clear – if the contract is for an illegal purpose, the court may not lend its aid to enforce it, but must leave the parties where it finds them." *Id.*

In *Mantilla v. United States*, the Third Circuit Court of Appeals held that public policy barred the return of $900,000 in funds voluntarily exchanged during a narcotics transaction, by operation of an extension of the *in pari delicto* concept. 302 F.3d 182, 183 (3d Cir. 2002).

10

More recently, Judge Bartle granted summary judgment against a construction company seeking to recover money due on contracts that were illegal because they involved the performance of electrical work without the required permits. *See EMCE Elec., Mech. & Constr. Co., Inc. v. Lennox Apartments, Inc.*, 2008 U.S. Dist. LEXIS 41335, at *3-5 (E.D. Pa. May 27, 2008) (granting summary judgment to defendants under the doctrine of unclean hands because "even accepting ECME's version of the facts as true, it clearly is no less at fault than defendants.")

Likewise, in an action for failure to pay the reasonable value of professional accounting services rendered in the amount of $100,000, plaintiff-accountant's claim was barred because he had not procured the requisite public accountancy certificate from the Pennsylvania State Board prior to rendering the professional services. *See Bauman and Vogel, C.P.A. v. Del Vecchico*, 423 F. Supp. 1041, 1043 (E.D. Pa. 1976) (doctrine of illegality).

Pennsylvania state courts also hold that regardless of whether a contract is involved in the plaintiff's claims, "[t]he principal of public policy is, that no court will lend its aid to a man who grounds his action upon an immoral or illegal act." *Alexander v. Synthatron Corp.*, 10 Pa. D. & C.4th 584, 589 (C.P. 1991), *aff'd* 620 A.2d 1230 (Pa. Super. Ct. 1992) (quoting *Fowler v. Scully*, 72 Pa. 456, 467 (1872)). In addition, "a person will not be permitted to profit by his own wrong, particularly by his own crime." *Id.* at 1230.

Thus, in *Alexander*, a plaintiff injured in a laboratory accident while illegally manufacturing methamphetamine was barred from recovering damages for his bodily injuries under strict liability, breach of warranty, and negligence theories. Similarly, in a legal malpractice case, plaintiffs who committed perjury, falsified exhibits, and bribed a witness with assistance of their attorneys were precluded from recovering compensatory and punitive

damages in their action against the attorneys for malpractice.  *Feld & Sons Inc. v. Pechner, Dorman, Wolfee, Rounick and Cabot*, 458 A.2d 545 (Pa. Super. Ct. 1983).

In another context, in one of the earliest reported Pennsylvania opinions discussing the doctrine of illegality, the Supreme Court of Pennsylvania held that wages cannot be recovered on a contract to serve as a marker at an illicit billiard table, such contract being unlawful and void.  *See Badgley v. Beale*, 3 Watts 263, 1834 Pa. LEXIS 177 (1834).  The Supreme Court of Pennsylvania proclaimed "the existence of a rule which inhibits the execution of a contract whose consideration was aid or encouragement, however remote, of an act prohibited even by the common law; and where, as here, the act is prohibited by statute, the rule is still, if possible, more extensive in its consequences."  *Id.* at *4.[7]

Hence, in an action where plaintiff alleged he entered into an oral agreement to invest $10,000 in bingo games operated and organized by defendant in consideration for a share of the profits, and plaintiff gave defendant $10,000 but never received any return on his investment from which defendant earned substantial profits, the court held that because plaintiff's action was "founded solely on an illegal transaction, i.e., the conduct of a bingo game" the "court cannot permit plaintiff to recover on this count."  *Mancini v. Yerkes*, 10 Pa. D. & C.3d 612, 613-614 (C.P. 1979).

The circumstances of Peoples' case are even worse, however, than the foregoing cases.  Unlike in *Alexander*, for example, where the plaintiff denied manufacturing drugs, here, Peoples brazenly admitted to committing prostitution offenses, describing them in sordid detail during his deposition.  In addition, because DFS was unaware that Peoples had been using his

---

[7]     The Supreme Court also discussed Pennsylvania's ancient prohibition on enforcing any contract involving prostitution, explaining that the sole exception to the prohibition was for "an action sustained for washing the clothes of a prostitute, knowing her to be such, on the humane principle that even a prostitute must have clean linen for honest purposes."  *Id.* at *3.

Discover Card to purchase prostitution services when the transactions took place, DFS is an innocent party. Thus, even accepting Peoples' version of the facts as true, Peoples cannot recover against DFS under any theory.

Furthermore, the interest of maintaining the dignity of a court of justice weighs against permitting this ill-considered lawsuit to proceed any farther than it has already. The Court should not be forced to rule on issues such as whether Ms. Dayle was entitled to double the amount she charged Peoples during sessions where he came twice during intercourse (Peoples Tr. 29, 64), and whether Peoples was owed a partial refund because Ms. Dayle refused to allow him to perform anal sex on her (Peoples Tr. 55).

For the foregoing reasons, and because there is no genuine issue of material fact that Peoples can raise to legitimately prosecute his claims, the Court should apply the doctrine of illegality and grant DFS summary judgment.

### C.    Peoples' Breach of Contract Claim Fails as a Matter of Law.

#### 1.    Peoples cannot prove the elements for breach of contract.

Peoples fails to satisfy all the element required to state a breach of contract claim because he has not -- and cannot -- point to any specific provision of the Cardmember Agreement that imposes any duty owed by DFS that it has in turn breached.

A plaintiff must prove three elements to prove a breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003), citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Under *Celotex Corp. v. Catrett*, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  477 U.S. 317, 322 (1986).

Peoples references a "written cardholder membership contract" with DFS in his Complaint, and avers in a conclusory fashion that DFS breached the contract through its "acts and omissions" and "by failing to substantially provide the credit card services it agreed to provide to Plaintiff."  (Compl. ¶¶ 6, 33).

DFS serviced Peoples' Discover Card, which is governed by the Cardmember Agreement.  DFS abided by the Cardmember Agreement by allowing Peoples to use the credit card and charging Peoples for his purchases.  Peoples has not raised any provision of the Cardmember Agreement that imposes a duty that DFS breached.

Because the record is devoid of any evidence supporting Peoples' breach of contract claim, i.e., the identification of any provision in the Cardmember Agreement specifying a duty DFS breached, DFS is entitled to summary judgment.

2.    **DFS did not breach any duties imposed by its Cardmember Agreement.**

Peoples' breach of contract claim places the boat before the tug -- because Peoples is dissatisfied with the outcome of the investigation, DFS must have breached its Cardmember Agreement with him.

Assuming for argument's sake that even without citing any contractual language, the claim that DFS should have credited Peoples for the amount of the disputed charges somehow constitutes a proper breach of contract claim, his claim is meritless because the overwhelming evidence demonstrates the reasonableness of DFS's investigation and its outcome. The record shows:

- Peoples voluntarily provided his Discover Card to Ms. Dayle.  (Peoples Tr. at 58);

- Peoples had a pattern of prior consistent charges with the Dayle Defendants for six months leading up to the disputed charges.  Peoples

14

incurred 23 undisputed charges for $375 (once), $750 (18 times), $1075 (twice), and $1100 (twice), all of which appeared on his monthly billing statements between March 2007 and September 2007.  (Holdman Aff. ¶ 7);

- During the investigation, Peoples reported to DFS that he purchased escort services from the Dayle Defendants.  (Holdman Aff. ¶ 10), (Peoples Tr. at 53);

- Peoples admitted to signing the receipts for the transactions at issue in paragraph 13 of his Complaint; and

- Peoples' Cardmember Agreement with DFS provided that: "Your Account may not be used to . . . or for any transactions that are unlawful where you reside or where you are physically located when you use the Account to initiate the transaction ("Prohibited Transactions").  (Cardmember Agreement at 2-3).

Based on the foregoing record, including that Peoples' dispute arose out of Prohibited Transactions under the Cardmember Agreement, Peoples cannot prove that DFS acted other than reasonably in declining to credit his account for the disputed charges.

According to the United States Supreme Court, a court on a motion for summary judgment can decide that the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243 (1986).  Summary judgment will not be denied because of the mere existence of some evidence in support of the nonmoving party.  The nonmoving party must present sufficient evidence for a jury to reasonably find for them on that issue.  *See id.*, at 249.  Moreover, a party opposing summary judgment cannot merely rely upon bare assertions, conclusory allegations, or suspicions.  *See Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982); s*ee also Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1252 (3d Cir. 1987).

Peoples lacks the evidence required to prove that DFS breached its Cardmember Agreement.  Accordingly, DFS is entitled to summary judgment.

**D.    Peoples' Americans With Disabilities Act Claim Fails as a Matter of Law.**

    **1.    Peoples is not entitled to relief under Title III of the ADA because the Discover Card services provided by DFS were unrelated to a "place of public accommodation" of DFS as defined by the Third Circuit in *Ford v. Schering-Plough Corporation.***

Peoples insists that the Discover Card services constitute a "public accommodation" under Title III of the ADA because the "services are used in business, stores, shops and many other places open to the public." (Compl. ¶ 27). Plaintiff is wrong.

The fatal flaw in Peoples' Title III claim is that Peoples cannot demonstrate any nexus between the Discover Card services he used to pay the Dayle Defendants and a place of public accommodation owned, leased, or operated by DFS. Peoples incorrectly asserts that the Discover Card services are a "public accommodation" falling within the rubric of Title III. Title III provides in pertinent part: "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, leases to, or operates a place of public accommodation." 42 U.S.C. § 12182(a).

The Third Circuit in *Ford v. Schering-Plough Corp.*, interpreted this provision to mean that a "public accommodation" must have some nexus to a physical place owned, leased, or operated by the defendant:

> The plain meaning of Title III is that a public accommodation is a place . . . . Since Ford received her disability benefits via her employment at Schering, she had no nexus to MetLife's "insurance office" and thus was not discriminated against in connection with a public accommodation . . . . Ford cannot point to these terms ["goods, services, facilities, privileges, advantages, or accommodation"] as providing protection from discrimination unrelated to places.

145 F.3d 601, 612-613 (3d Cir. 1998); *see also Access Now, Inc. v. Southwest Airlines Co.*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002) (dismissing claims that the goods and services offered by an

airline at its "virtual ticket counters" are inaccessible to blind customers on grounds that the "plain and unambiguous" language of Title III does not include internet web sites among the definitions of "places of public accommodation."), *aff'd* 385 F.3d 1324, 1329 (11th Cir. 2004) (affirming dismissal and holding that to support their claim, "the plaintiffs must show that these 'physical facilities' exist and that they bear a reasonable 'nexus' or connection with Southwest.com that subjects it to the public accommodations requirements of Title III.").

In *Ford v. Schering-Plough Corp.*, the Third Circuit ruled that disability benefits "do not qualify as a public accommodation." 145 F.3d 601, 612. The Third Circuit concluded, "'it is all of the services which the public accommodation offers, not all services which the lessor of the public accommodation offers[,] which fall within the scope of Title III.'" *Id.* (quoting *Stoutenborough v. National Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995) (a television broadcast is not covered by Title III)). By the same logic, the Discover Card services here "do not qualify as a public accommodation" because "it is all of the services which the public accommodation offers, not all services offered" by third-parties to pay for services which "the public accommodation offers, which fall within the scope of Title III."

Here, Peoples used the electronic payment services DFS offered through its Discover Card to purchase services from the Dayle Defendants at Ms. Dayle's apartment. Credit cards serviced by DFS may be used at a merchant's place of public accommodation, if any, but DFS does not own, lease, or operate those places. Just as with the disability insurance services at issue in *Ford v. Schering-Plough Corp.*, Peoples cannot demonstrate any nexus to a physical place of public accommodation owned, leased, or operated by DFS. *See* 42 U.S.C. § 12182(a).

Accordingly, because Peoples cannot demonstrate any nexus between the Discover Card services he used to pay the Dayle Defendants and a place of public

accommodation owned, leased, or operated by DFS, the Court should grant DFS summary judgment as a matter of law on Peoples' Title III of the ADA claim.

### 2. The disputed transactions took place at a private residence rather than at a place of public accommodation.

Peoples was not excluded from any place of public accommodation because his transactions with the Dayle Defendants took place at Ms. Dayle's apartment. Private homes are not subject to the public accommodations requirements of Title III. *See Independent Hous. Servs. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) ("apartments and condominiums do not constitute public accommodations within the meaning of the Act."). Peoples testified at his deposition that all of the services he purchased from Ms. Dayle occurred "[i]n her apartment. It all occurred in her apartment." (Peoples Tr. at 16).

Since Peoples testified that all his purchases of services from Ms. Dayle took place at her apartment, Peoples cannot demonstrate that he was excluded from any place of public accommodation. The Court should thus grant DFS summary judgment as a matter of law on Peoples' Title III of the ADA claim.

### 3. DFS provides transaction charges in another reasonable format for the sight impaired such as over the telephone.

Peoples' ADA claim is that DFS "failed to take steps to reasonably accommodate Plaintiff in that it has failed to provide an auxiliary devise [sic] to allow him to hear or feel the amount being charged on his receipt, or to prevent fraud by merchants or to take remedial measures in the case of fraud by merchants." (Compl. ¶ 29). Plaintiff is wrong.

DFS already provides information on the amount being charged on a receipt in another reasonable format for the sight impaired such as over the telephone. All cardmembers may call 1-800-DISCOVER (347-2683), 24-hours a day in order to hear and check a list of recent transactions posted to the account by date, amount, and transaction type. (Holdman Aff.

¶ 8).  The automated menu includes a "blind option zero" whereby cardmembers may dial zero to connect with a live customer services representative in order to hear and ask questions about their recent transactions, and other account information, from a DFS representative.  (Holdman Aff. ¶ 9).

Peoples admitted that he could have telephoned DFS to check and hear the amounts charged to his Discover Card account, but simply chose not do so:

> Q.    Would you have been capable as a blind person of using the telephone to call Discover had you chosen to do so?
>
> **A.    Yes, I would.**

(Peoples Tr. at 67).

Likewise, DFS has chargeback procedures to reverse a merchant's charges to a cardmember, but the procedures were not applicable in Peoples' case for reasons discussed above in greater detail, including that he had an ongoing relationship with the Dayle Defendants during which he voluntarily provided his Discover Card to Ms. Dayle.

Accordingly, since DFS already offers by telephone the information Peoples seeks (i.e., information on the amounts charged to his account in a format he can hear), but Peoples simply failed to take advantage of this accommodation, the Court should grant DFS summary judgment as a matter of law on Peoples' Title III of the ADA claim.

**E.    Peoples' Section 504 Claim Fails as a Matter of Law Because The Rehabilitation Act Applies Only to a Program or Activity Carried Out by a Federal Executive Agency or With Federal Funds.**

Peoples lacks the evidence required to prove a section 504 violation.  On its face, the Rehabilitation Act only applies to a "program or activity receiving Federal financial assistance" or "conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a); *see also Disabled in Action v. Sykes*, 833 F.2d 1113, 1116 n.5 (3d Cir. 1987)

("Section 504 affords a private right of action to handicapped persons who are excluded from federally funded programs.").

Peoples has not alleged -- nor can he prove -- that he was subject to discrimination under any program or activity carried out by a federal executive agency or with federal funds.  DFS is a wholly owned subsidiary of Discover Financial Services, a publicly traded, independent company.  (Holdman Aff. ¶ 2).  Thus, DFS is not a federal agency and Discover Card is not carried out with federal funds.  Accordingly, the Court should grant DFS summary judgment as a matter of law on Peoples' section 504 claim.

**F.    Peoples' Pennsylvania Human Relations Act Claim Fails as a Matter of Law Because Peoples Failed to Exhaust His Administrative Remedies.**

Peoples' PHRA claim must be dismissed because he failed to file any claim before the Commission.  It is the law of this Commonwealth that a plaintiff who wishes to bring a PHRA claim in civil court must first file an administrative complaint with the Commission and exhaust available administrative remedies before he or she may obtain judicial review.  *See Marriott Corp. v. Alexander*, 799 A.2d 205, 207 (Pa. Commw. Ct. 2002); *Companaro v. Pennsylvania Elec. Co.*, 738 A.2d 472, 474 n.1 (Pa. Super Ct. 1999).  Furthermore, if a plaintiff fails to file a timely complaint with the Commission within 180 days of the alleged discriminatory acts, then he or she is precluded from pursuing judicial remedies.  *See Kunwar v. Simco*, 135 F. Supp. 2d 649, 655 (E.D. Pa. 2001); *Richards v. Foulke Assocs.*, 151 F. Supp. 2d 610, 612-13 (E.D. Pa. 2001).

On April 18, 2008, Peoples filed his Complaint with this District Court, alleging that DFS discriminated against him in 2007, yet Peoples never filed a complaint before the Commission.  Thus, Peoples failed to exhaust all administrative remedies available to him.  Moreover, more than 180 days have passed since the alleged discriminatory acts took place.

Additionally, Peoples' failure to file any complaint with the Commission is uncorrectable because "[i]f a complainant institutes any action based on a cognizable grievance without resorting to the procedures provide by the Act, he or she may not subsequently resort to those procedures." P.L.E.2d Civil Rights § 23, at 136 n.24 (citing 43 P.S. § 962(b)). Hence, Peoples' PHRA claim is improper and untimely and must be dismissed with prejudice.

## IV.    CONCLUSION

Under the doctrine of illegality, a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing. Plaintiff John F. Peoples could not be more brazen in boasting that his claims are grounded upon illicit prostitution offenses. Therefore, Defendant DFS Services LLC is entitled to judgment as a matter of law and the Court must grant its Motion for Summary Judgment and dismiss Count One of the Complaint with prejudice in its entirety.

Respectfully Submitted

By:    /s/ Benjamin M. Schmidt
Martin C. Bryce, Jr. (I.D. No. 59409)
Benjamin M. Schmidt (I.D. No. 205096)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103

Dated: November 13, 2008              Attorneys for Defendant DFS Services LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 13, 2008, I caused a true and correct copy of Defendant DFS

Services LLC's Motion For Summary Judgment to be served, upon:

>Stephen H. Cristal, Esquire
>Law Offices of John F. Peoples
>2701 West Chester Pike, Suite 104
>Broomall, PA  19008
>*Counsel for Plaintiff John F. Peoples*
>(via ECF)

>William C. Reil, Esquire
>42 South 15th Street, Suite 210
>Philadelphia, PA  19102-2206
>*Counsel for Defendants Ginger Dayle, Ginger*
>*Dayle Productions, and New City Stage Company*
>(via ECF and Hand Delivery)

Dated:  November 13, 2008                    /s/   Benjamin M. Schmidt
                                                          Benjamin M. Schmidt