IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. PEOPLES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 08-2024 |
| DISCOVER FINANCIAL SERVICES, | : | |
| INC., et al. | : | |

**<u>MEMORANDUM</u>**

Ludwig, J.                                                                                              September 22, 2009

This is a contract and civil rights action arising from allegedly fraudulent credit card charges.[1] The parties filed cross-motions for summary judgment.[2] Judgment will be granted in favor of DFS and against plaintiff on the civil rights claims and the breach of contract

---

[1] Defendant Discovery Financial Services, Inc., now known as DFS Services LLC, issued a Discover Card to plaintiff John F. Peoples. DFS Answer, ¶ 5. Count One of the complaint asserts civil rights claims against DFS as follows: violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Pennsylvania Human Relations Act, 43 P.S. § 951. Complaint, ¶¶ 20-34. Count One also includes a claim for breach of the Cardmember Agreement that sets forth the terms and conditions of plaintiff's account with DFS.

The complaint alleges that defendants Ginger Dayle, Ginger Dayle Productions (a Pennsylvania corporation), and New City Stage Company (a trade name) provided services to plaintiff in exchange for payment. Complaint, ¶¶ 6, 12-13; Dayle Answer, ¶ 8. Count Two of the complaint asserts state law claims against the Dayle defendants as follows: violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, common law fraud, and breach of contract. Complaint, 35-40. The Dayle defendants counterclaimed against plaintiff for battery and intentional infliction of emotional distress.

[2] "Summary judgment is appropriate only 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' Fed.R.C.P. 56(c). The facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in that party's favor." <u>Caplen v. SN Servicing Corp.</u>, 2009 WL 2713979, *2 (3d Cir., filed Aug. 31, 2009), citing <u>Conopco, Inc. v. United States</u>, 572 F.3d 162, 165 (3d Cir. 2009).

claim against DFS.[3]  Inasmuch as no independent basis exists for the exercise of federal jurisdiction over plaintiff's state law claims or the Dayle defendants' counterclaim, those claims will be dismissed without prejudice to filing in state court.

According to the complaint, beginning in March 2007, plaintiff John F. Peoples, a blind person, relied on defendant Ginger Dayle to enter agreed upon amounts on his credit card receipts, but in several instances she entered larger amounts, which were charged to plaintiff's Discover Card.  Complaint, ¶¶ 4-5, 12-15.  Plaintiff unsuccessfully disputed the overcharges as fraudulent, and Count Two of the complaint sets forth that the Dayle defendants defrauded him.  Id., ¶¶ 15, 16, 36-40.  As to DFS, his civil rights claim is that his disability was not reasonably accommodated by DFS so as to prevent his being defrauded, and, as a result, he has been discriminated against and deprived of civil rights in violation of the ADA, the Rehabilitation Act, and the PHRA.  Id., ¶¶ 23-28.

The relevant facts of record[4] are as follows:

As alleged, in March 2007, plaintiff began purchasing services from defendant Ginger Dayle.  April 2007 Discovery billing statement, Exhibit "D" to DFS' motion.  At his deposition, plaintiff described these services as prostitution: "I paid her and she had sex with

---

[3] Plaintiff's request for further discovery is denied.  Plaintiff did not submit an affidavit as required under Fed. R. Civ. P. 56(f) stating why he cannot present facts in opposition to DFS' motion, or proffer any discovery that would result in the discovery of further evidence supporting his claim.

[4] The summary judgment record includes the pleadings, responses to interrogatories and document requests, affidavits, and plaintiff's deposition.

me and there was an understanding that it was payment for sex." Deposition Transcript of John Peoples, at 5, Exhibit "B" to DFS' motion.[5] The encounters took place in Dayle's apartment and were paid for by charges to plaintiff's credit card, which plaintiff gave to Dayle when she filled out the credit charge receipts. Peoples N.T. at 6, 16. He signed the receipts that she had prepared, but he could not see them. Complaint, ¶ 13. By November 2007, plaintiff had entered into at least 25 such transactions with Dayle, and plaintiff disputed 11 of them that occurred in October and November as overcharges - 10 at $1,110 each, and one at $1,600. Peoples N.T., 5, 53; complaint, ¶¶ 12-14.[6] All of plaintiff's testimony in these regards is credited as true.

On plaintiff's breach of contract claim, defendant DFS contends that it is entitled to judgment as a matter of law because plaintiff's purchase of prostitution services was unlawful and, therefore, a "prohibited transaction," which constituted a breach of the Cardmember Agreement. See Cardmember Agreement, at 2-3, Exhibit "F" to DFS' motion

---

[5] It does not appear that plaintiff told DFS that he was purchasing prostitution services at the time he disputed the charges. Affidavit of Misty Holdman, Staff Associate for DFS, ¶ 13, Exhibit "E" to DFS' motion. Moreover, the complaint makes no reference to prostitution, describing Dayle as a "service provider, providing personal, private sessions with clients for a predetermined per-session fee. She is not a doctor, nurse or licensed medical practitioner. She advertises herself at [sic] an expert at providing personal, hands-on service to individual customers in private sessions at a set rate." Complaint, ¶ 6. Further, in response to DFS' requests for admissions and interrogatories, plaintiff did not admit that he was purchasing prostitution services. Exhibits "G" - "J" to DFS' reply. It was not until his October 23, 2008 deposition that plaintiff stated that the charges were for prostitution.

[6] Plaintiff does not dispute prior charges for the same type of services from $375 to $1,100. Holdman affidavit, ¶¶ 4-7. Plaintiff acknowledges that Discover Card members can have a customer services representative check a transaction before a receipt is signed, but he did not attempt to do so. Peoples N.T., 67-68; Holdman affidavit, ¶¶ 8, 9.

("Your Account may not be used to . . . or for any transactions that are unlawful where you reside or where you are physically located when you use the Account to initiate the transaction ('Prohibited Transactions').") Under Pennsylvania law, patronizing a prostitute is illegal. 18 Pa.C.S. § 5902(e). Plaintiff testified that the charges in dispute were for prostitution services, Peoples N.T., at 5, 73, and, consequently, he cannot recover based on them.

Moreover, plaintiff has not presented any evidence to show that DFS did not fulfill its Cardmember Agreement duties to him. His argument that DFS should have been alerted to question the charges in October and November because they were not consistent with those in the preceding six months is without merit. Plaintiff agrees that he had authorized two $1,100 charges before the ten he disputes. There is no genuine issue of material fact as to this claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 243 (1986) ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" basis on which to deny summary judgment). Judgment must be granted in DFS's favor and against plaintiff on the breach of contract claim.

Defendant also asserts that it is entitled to judgment on plaintiff's ADA claim because Discover Card services cannot be said to constitute a "public accommodation" as set forth in Title III. "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases,

4

leases to, or operates a place of public accommodation." 42 U.S.C. § 12182(a). "The plain meaning of Title III is that a public accommodation is a place. . . . [P]laintiff cannot point to these terms [goods, services, facilities, privileges, advantages, or accommodations] as providing protection from discrimination unrelated to places." Ford v. Schering-Plough Corp., 145 F.3d 601, 612-13 (3d Cir. 1998) (disability benefits do not qualify as a public accommodation). See also Access Now, Inc. v. Southwest Airlines Co., 227 F.Supp.2d 1312 (D. Fla. 2002) (goods and services offered by airline at "virtual ticket counter" do not fall within Title III - internet websites are not places of accommodation); aff'd, 385 F.3d 1324, 1329 (11th Cir. 2004) ("plaintiffs must show that these 'physical facilities' exist and that they bear a reasonable 'nexus' or connection with Southwest.com that subjects it to the public accommodations requirement of Title III.").

The evidence is that plaintiff used his Discover Card to pay for the transactions with Dayle at her apartment. Though its credit services can be used by cardmembers at a merchant's place of accommodation, DFS itself does not own, lease or operate those locations.[7] Because there is no connection here between the services offered by DFS and a

---

[7] DFS also asserts that Dayle's apartment, a private residence, is not subject to the public accommodation requirements of Title III. Independent Housing Services of San Francisco v. Fillmore Center Assocs., 840 F. Supp. 1328, 1344 n.14 (N.D. Cal. 1993)("the legislative history of the ADA clarifies that 'other place of lodging' does not include residential facilities.") Plaintiff counters that the apartment is a place of business, where Dayle sells her services, and is, therefore, a place of public accommodation. This does not, however, speak to the deficiency in plaintiff's position - though DFS' credit services may be used in a place of public accommodation, they are not themselves places of public accommodation, or sufficiently linked to those places to make them subject to the requirements of the ADA.

physical place of accommodation, plaintiff's Title III claim must be dismissed.

As to plaintiff's Rehabilitation Act claim, Section 504 of the Rehabilitation Act provides protection against discrimination as follows: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). See also Disabled in Action v. Sykes, 833 F.2d 1113, 1116 n.5 (3d Cir. 1987) ("Section 504 provides a private right of action to handicapped persons who are excluded form federally funded programs."). According to the affidavit of Misty Holdman, Staff Associate for DFS Services LLC's Consumer Advocacy Group, DFS "is a wholly owned subsidiary of Discover Financial Services, a publicly traded, independent company." Holdman Affdavit, ¶ 2. There is no evidence that it is related to any executive agency or the United States Postal Service, or that it receives federal funds. Accordingly, as a matter of law, it is not subject to the requirements of the statute, and judgment must be granted in DFS's favor and against plaintiff on the Section 504 claim.

As to plaintiff's PHRA claim, DFS urges dismissal because plaintiff did not exhaust his administrative remedies - he did not file a complaint with the Pennsylvania Human Relations Commission within 180 days of the alleged discriminatory conduct described in his complaint. Richards v. Foulke Assocs., 151 F.Supp.2d 610, 612-13 (E.D. Pa. 2001),

citing 43 Pa.C.S. §§ 959(a), 962 ("To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination.") Plaintiff responds, without authority, that his completion of DFS' internal fraud claim process satisfied PHRA's administrative requirements, and that the requirements cited by defendant are applicable only in the employment discrimination context. These positions, however, are incorrect. See Douris v. Genuardi's Family Markets, 2004 WL 2137821, *3 (E.D. Pa., filed Sept. 22, 2004) (granting summary judgment to defendant grocery store in action alleging accessibility problems where plaintiff did not exhaust remedies under PHRA); Bethea v. Michael's Family Restaurant and Diner, 2001 WL 722566, *4 (E.D. Pa., filed June 26, 2001) (granting motion to dismiss in favor of defendant restaurant in action alleging race discrimination in serving patrons where plaintiffs did not exhaust remedies under PHRA). Because plaintiff did not exhaust his administrative remedies as required, his PHRA claim must be dismissed.

Also pending are cross-motions for summary judgment by plaintiff and the Dayle defendants. Issues of material fact predominate these motions, rendering summary judgment inappropriate. As to plaintiff's claim that he purchased prostitution services from her and was overcharged, defendant Dayle's position is that the services were for physical fitness instruction, and plaintiff was not defrauded. Dayle answer, ¶¶ 8, 13, 14. The counterclaim alleges that plaintiff made sexual advances and grabbed Dayle without her permission. Counterclaim, ¶¶ 3, 4. Additionally, she claims he filed the present claims against her

because she refused his sexual advances. Id., ¶¶ 6-8. Plaintiff denies these allegations. Answer to counterclaim, ¶¶ 3-8.

"The rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court." Markowitz v. Northeast Land Co., 906 F.2d 100, 106 (3d Cir. 1990) (citations omitted). See also Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless consideration of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.")

Here, principles of judicial economy do not provide a justification for exercising jurisdiction over plaintiff's or the Dayle defendants' state law claims. There are no extraordinary circumstances warranting the exercise of federal jurisdiction. Plaintiff's state law claims and the Dayle defendants' counterclaim will be dismissed without prejudice. Those claims may be filed in state court. See 42 Pa.C.S.A. § 5103(b) (governing transfer of action from federal to state court following dismissal for lack of jurisdiction).

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.